UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**B.H.**, a minor, by her parents,
Jamie and Trevor Holzhueter
N7275 County Road I
Juneau, WI 53039,
And
**JAMIE AND TREVOR HOLZHUETER,**
N7275 County Road I,
Juneau, WI 53039,

   Plaintiffs,

-vs-                        **CASE NO.** 22-1027

**BADGER BUS,**
5501 Femrite Drive,
Madison, WI 53718
And
**BRANDON KRAUSE,**
c/o Beaver Dam Unified School District,
705 McKinley Street
Beaver Dam, WI 53916
And
**KARI DUAX,**
W 8806 Enterprise Circle
Beaver Dam, WI 53916
And
**NANCY BELTER,**
W7415 Apache Drive
Beaver Dam, WI 53916
and
**JANE DOE,**
c/o Beaver Dam Unified School District
705 McKinley St.
Beaver Dam, WI 53916
And
**BEAVER DAM UNIFIED SCHOOL DISTRICT,**
705 McKinley Street
Beaver Dam, WI 53916

   Defendants.

1

## COMPLAINT

**NOW COMES,** the Plaintiffs, B.H. and Jamie and Trevor Holzhueter, by and through their attorneys, Attorney Briane F. Pagel and Lawton Cates, S.C., and as and for a complaint against the above-named defendants hereby allege as follows:

1. B.H. was a 3-year-old, nonverbal, special needs student in the Beaver Dam 3K program during the events and circumstances outlined in this complaint. Claimant B.H. resides at N7275 County Road I, Juneau, WI 53039.

2. Jamie Holzhueter ("Jamie") and Trevor Holzhueter ("Trevor") are the parents and legal guardians of B.H. and reside at N7275 County Road I, Juneau, WI 53039.

3. Defendant **Badger Bus** is upon information and belief a corporation whose primary business is providing bus services to school districts. Badger Bus has a principal place of business located at 5501 Femrite Drive, Madison, WI 53718.

4. Defendant **Brandon Krause** is an individual Wisconsin citizen who at all times material hereto was employed as the principal in the Beaver Dam Unified School District ("the District"). Krause's business address is 705 McKinley Street, Beaver Dam, WI 53916.

5. Defendant **Kari Duax** is an individual Wisconsin citizen who at all times material hereto was employed by the District as a long-term substitute teacher. Duax lives at W8806 Enterprise Circle, Beaver Dam, WI 53916.

6. Defendant **Nancy Belter** is an individual Wisconsin citizen who at all times material hereto was employed by the District as an early childhood teaching assistant. Belter resides at W7415 Apache Drive, Beaver Dam, WI 53916.

7. Defendant **Jane Doe** is an unknown individual Wisconsin citizen who, upon information and belief, was involved in the events herein as further set forth herein. Jane Doe is being fictitiously named and this complaint will be amended upon learning Jane Doe's identity.

8. Defendant **Beaver Dam Unified School District** is an educational school district government entity organized under the laws of the State of Wisconsin with a principal place of business located at 705 McKinley Street, Beaver Dam, WI 53916.

## Jurisdictional Allegations:

9. This case is brought in the Eastern District of Wisconsin because the events which are alleged herein took place in the Eastern District of Wisconsin; and further the claims herein involve a federal question.

10. This Court has jurisdiction over the federal questions alleged in this case pursuant to 28 USC sec. 1331; this Court has jurisdiction over the state law claims alleged in this case pursuant to 28 USC 1367.

## Factual Allegations:

11. The school district runs a 3K program for children in the district. B.H. began participating in the Beaver Dam 3K program in 2021.

12. B.H. has special needs. Beginning in or around November 2020, B.H. began receiving services from the Dodge County Birth to 3 Program. B.H.'s special needs included delayed speech, and a limited ability to function independently or follow directions.

13. After an evaluation, it was determined by the District that B.H. should receive special education services through the District's Early Childhood Program.

14. Beginning in 2021, B.H. began attending the Early Childhood Program pursuant to an Individualized Education Plan ("IEP") that called for her to attend school at the District 4 times per week.

15. At the times material hereto, B.H. would attend the Early Childhood Program in the afternoon; she would be at daycare in the morning.

16. The District, at all times material hereto, was responsible for transporting B.H. from daycare to school. At the end of the school day B.H. would be picked up at the District by her parents.

17. The District contracted with Badger to provide transportation to The District for special needs students. Badger had the responsibility of transporting B.H from her daycare to The District each afternoon pursuant to The District's duty to provide safe transportation under Wis. Stat. § 121.54 *et seq*. Badger also transported other three and four-year-old students with special needs. During this transportation, The District required that B.H. be in a 5-point safety harness that held her immobile on the bus.

18. B.H. could not unhook or unstrap the 5-point safety harness that held her on the bus by herself, and required another person to do so before she could exit the bus.

19. Each day that she attended the District's Early Childhood Program, B.H. would be picked up at her daycare, placed on the bus and secured in the 5-point harness, and then transported to the District. This continued into 2022, when B.H. was in the 4k program at the District, attending each day in the afternoon.

20. Beaver Dam staff members including Krause, Duax, Belter and Jane Doe had the responsibility of retrieving B.H. from the Badger bus around 12:30 p.m. when she routinely arrived at The District. This included releasing B.H. from her 5-point safety harness.

21. On March 9, 2022, B.H. arrived at The District in a Badger bus just as she had every afternoon that school year. Upon arrival, the other Beaver Dam 4K students exited the bus, as usual.

22. On March 9, 2022, after the other 4K students exited the bus, Beaver Dam staff including Krause, Duax, Belter and Jane Doe did not enter the bus to retrieve B.H. In addition, Beaver Dam staff including Krause, Duax, Belter and Jane Doe did not check the bus for B.H. or ask the bus driver if B.H. had been picked up, despite having a conversation with the Badger driver at that time.

23. Krause, Duax, Belter and Jane Doe had been working with B.H. throughout the school year, were aware of B.H.'s special needs and that she would be unable to exit the bus on her own.

24. The Badger driver, who had been driving this route the entire year, did not conduct a routine safety check to see if any students had been left on the bus. Beaver Dam Staff, including Krause, Duax, Belter and Jane Doe, did not ensure that this safety check was done.

25. Because nobody released B.H. from her 5-point harness on March 9, 2022, and because neither the Badger Bus driver nor any employee of the District checked to see if B.H. was on the bus, the driver left the District with B.H. still restrained in the back seat.

26. The Badger driver parked the bus on a street with traffic in front of the driver's home, leaving B.H. alone on the bus in below-freezing weather unable to exit her seat due to the 5-point safety harness that was never removed.

27. After over an hour, the Badger driver re-entered the bus and drove it fifteen minutes before parking it in Badger's parking lot. B.H. was again left alone in below-freezing weather.

28. Over an hour later, a new Badger driver entered the bus that B.H. was restrained in. The driver stopped for gas and then drove to the District. Upon arriving at the District, the driver noticed B.H. and called Beaver Dam staff to retrieve her.

29. In all, B.H. was on the bus, restrained and with no adults present, from 12:30 p.m. to at least 3:10 p.m.

30. Beaver Dam staff including Krause, Duax, Belter and Jane Doe did not call Trevor or Jamie to notify them of this incident. Instead, the staff informed Jamie of what happened when she arrived at Beaver Dam to pick up B.H.

31. Jamie has called Beaver Dam to inform it of B.H.'s absence every time B.H. has missed school in the past. Jamie did not call Beaver Dam to inform it that B.H. would be absent on March 9.

32. Following the incident with B.H., Badger altered its protocol to better ensure that students are not left on its buses.

33. Badger suspended the driver responsible for leaving B.H. on the bus from driving routes for Beaver Dam.

34. Following the incident with B.H., Beaver Dam altered its policies to better ensure that students are not left on buses.

35. Beaver Dam as of March 9, 2022, did not have in place any safeguards, programs, rules, or procedures that were designed to ensure that special needs children such as B.H. were at school when they were supposed to be, or that the parents of such students were aware if a special needs' child was not in school when she was supposed to be.

## First Cause of Action:
## Illegal Seizure/Violation of Constitutional Rights:

36. Reallege and incorporate the foregoing as though set forth fully at this point.

37. B.H. had a constitutional right under the 4th Amendment, applicable to the State of Wisconsin via the 14th Amendment, to be free from unreasonable seizures of her person.

38. The District required that B.H. be held in a 5-point harness on the bus, immobilizing her, and further required said harness to be one that B.H. could not unlock or detach herself.

39. The District, as well as Defendants Krause, Duax, Belter, and Jane Doe were responsible for ensuring that B.H. was released from her 5-point harness upon arrival at the school. The District, Krause, Duax, Belter, and Jane Doe did not release B.H., or cause her to be released from her 5-point harness on March 9, 2022, resulting in B.H. being held immobile, on a bus, in below-freezing weather, for nearly 3 hours longer than she should have been held immobile.

40. The District, as well as Defendants Krause, Duax, Belter, and Jane Doe had no reason or interest in requiring B.H. to be held immobile for nearly 3 hours in below-freezing weather on March 9, 2022.

41. B.H. was not free to leave her seat on the bus, as she was physically incapable of releasing herself from her harness.

42. The District and staff, including Krause, Duax, Belter and Jane Doe, unreasonably restrained B.H.'s movement by leaving her in her 5-point harness on a Badger bus for three hours. In doing so, The District and staff, including Krause, Duax, Belter and Jane Doe recklessly disregarded B.H.'s Fourth Amendment right to be free from unreasonable seizures.

43. As a direct and proximate result of the foregoing, B.H. is entitled to an award of compensatory damages.

7

**44.** Further, the District and its staff, including Krause, Duax, Belter, and Jane Doe acted recklessly with respect to B.H.'s confinement and seizure on March 9, 2022; the conduct of said defendants as alleged herein demonstrates that none of the defendants cared about B.H.'s safety or her right to be free from unreasonable seizures. Accordingly, B.H. is entitled to an award of punitive damages.

## Second Cause of Action
## False Imprisonment:

45. Reallege and incorporate the foregoing as though set forth fully at this point.

46. The District and Badger Bus confined and restrained B.H. in her 5-point harness.

47. The District and Badger Bus confined and restrained B.H. intentionally.

48. The District and Badger Bus had lawful authority to confine and restrain B.H. only for the shortest period of time necessary to transport B.H. from her daycare to the District for the 4k program. Once B.H. arrived at the District for her 4k afternoon program, neither the District nor Badger Bus had any lawful authority to confine and restrain B.H. in her 5-point harness.

49. B.H.'s parents consented to B.H.'s confinement and restraint in her 5-point harness only for the shortest period of time necessary to transport B.H. from her daycare to the District for the 4k program. Once B.H. arrived at the District for her 4k afternoon program, her parents no longer consented to her being restrained or confined in her 5-point harness.

50. As a result of the District's and Badger Bus' false imprisonment, B.H. and her parents, Jamie and Trevor, suffered mental and emotional anguish and distress. Further, B.H.'s parents incurred financial costs by having to have B.H. participate in 4k at the daycare, rather than at the District, following the March 9 incident.

### Third Cause of Action
### Negligent Infliction of Emotional Distress:

51. Reallege and incorporate the foregoing as though set forth fully at this point.

52. The District had a duty of care to safely transport B.H. to school under Wis. Stat. § 121.54 *et seq*.

53. The District and its staff members including Krause, Duax, Belter and Jane Doe breached their duty of care to B.H. by, at least, the following:

   a. Failing to verify that the Badger buses used to transport Beaver Dam students had the required safety equipment and that the safety equipment was functioning properly and was being utilized by drivers;

   b. Failing to ensure that Badger drivers were adequately trained and supervised to ensure that students were not left on the bus;

   c. Failing to implement protocols or policies to ensure that students are not left on a bus;

   d. Failing to release B.H. from her 5-point harness;

   e. Failing to enter the bus and check for students left behind;

   f. Failing to inquire about B.H.'s absence on March 9; and

   g. Failing to immediately notify Jamie and Trevor of the incident with Badger.

54. Badger Bus had a duty of care to safely transport B.H. to and from The District, including ensuring that she was dropped off at the school and that she was not left on the bus for three hours in below-freezing weather.

55. Badger also had a duty of care under Wis. Admin. Code § Trans 300.16(18), which states that "[d]rivers shall check the entire interior of the school bus following each trip to assure all passengers are off the bus."

56. Badger breached its duty of care to B.H. by, at least, the following:

    a. Failing to ensure that B.H was dropped off at The District;

    b. Failing to inspect the bus for remaining children before leaving The District and after completing the bus route;

    c. Transporting B.H. on a bus that did not have a functioning child reminder system; and

    d. Failing to adequately supervise its drivers to ensure that they were implementing mandatory safety checks.

57. As a result of the actions and omissions of the entities and individuals identified herein, B.H. needlessly endured almost three hours of below-freezing weather alone on a bus. She was unable to move or notify anyone of her discomfort.

58. B.H. suffered from cold and fatigue at the time, as well as emotional and mental suffering caused by her solitude, cold, and fatigue; and B.H. will upon information and belief continue to suffer mental and emotional distress and worry caused by this incident.

59. B.H.'s mental and emotional distress on March 9, 2022 and thereafter were severe; because B.H. suffers from language delays it is difficult for her to express emotions and difficult for others to understand her emotions. Despite that, B.H. had not prior to this incident been left alone, let alone left alone in an abandoned bus for nearly 3 hours in below-freezing weather, restrained and unable to do anything, and B.H. has suffered severe and substantial emotional distress from this traumatic episode.

60. Further, the defendants owed a duty of care to Jamie and Trevor to transport B.H. to and from school, and to notify Jamie and Trevor if B.H. was not at school.

10

61. Defendants breached their duty of care to Jamie and Trevor by their actions alleged herein.

62. As a direct and proximate result of the actions and omissions of the entities and individuals identified herein, Jamie and Trevor suffered severe emotional distress. Jamie and Trevor were told that their three-year-old, nonverbal daughter was alone for almost three hours; they rightfully imagined horrendous scenarios about what happened to B.H. during that time. Jamie and Trevor were unable to sleep for nights. They continue to suffer related emotional distress and anxiety each day that B.H. must go to school.

### Fourth Cause of Action:
### Negligent Supervision and Training:

63. Reallege and incorporate the foregoing at this point.

64. Both the District and Badger Bus had a duty to use reasonable care in the training and supervision of their employees.

65. Properly - trained and supervised employees of the District and Badger Bus would have followed state law and reasonable procedures, and would have checked the bus for any students before leaving the District.

66. Properly - trained and supervised employees of the District would have had in place a program or rule which would have noted the absence of a 3-year-old special needs child from her classroom, and would have alerted the parents of that absence.

67. Properly - trained and supervised employees of the District would have had in place a program or rule which would have checked any bus to make sure that all students disembarked before the bus left.

68. The actions and inactions alleged herein demonstrate that neither the District nor Badger Bus properly trained nor properly supervised their employees.

11

69. The District and Badger Bus breached their duty to properly train and supervise their employees, and that breach led to physical injury for B.H. as she was confined in a below-freezing bus, and mental stress and anguish for B.H., Jamie, and Trevor.

70. As a direct and proximate result of the foregoing, plaintiffs are entitled to an award of compensatory damages.

WHEREFORE, plaintiffs request the Court award them such damages, costs and fees, together with any other relief, to which they are entitled, or the Court deems just and equitable.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES IN THIS ACTION.**

Dated: This 7th day of September, 2022.　　**Lawton Cates, S.C.**
Attorneys for Plaintiffs
*Electronically Signed By:*

*/s/ Briane F. Pagel*
Attorney Briane F. Pagel
State Bar No. 1025514

P.O. Address:
345 W. Washington Ave Ste. 201
P.O. Box 2965
Madison, WI 53703
P: 608.282.6200/F: 608.282.6252
bpagel@lawtoncates.com